UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 8, 2024

LETTER TO COUNSEL

      RE:    *Kurley J. v. Commissioner, Social Security Administration*
                Civil No. SAG-23-1753

Dear Counsel:

On June 29, 2023, Plaintiff petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") decision to deny her claims for benefits. ECF No. 1. Having reviewed the record (ECF No. 8) and the parties' briefs (ECF Nos. 13, 15, 18), I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). I must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will reverse the SSA's decision and remand this case for further analysis. This letter explains my rationale.

### I.    PROCEDURAL BACKGROUND

Plaintiff protectively filed claims for disability insurance benefits and supplemental security income benefits on October 18, 2017. Tr. 795. She alleged a disability onset date of October 13, 2017. *Id.* Her claims were denied initially and on reconsideration. *Id.* After an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claims, the ALJ denied the claims on October 7, 2019. *Id.* The Appeals Council declined to review that decision, so Plaintiff appealed to this Court.[1] *Id.* The Court remanded Plaintiff's case to the SSA. *Id.* A second hearing was held on February 15, 2023. Tr. 796. On March 20, 2023, an ALJ issued an unfavorable decision on Plaintiff's claims. Tr. 792–830. Plaintiff filed no exceptions with the Appeals Council and the Appeals Council did not assume jurisdiction, so the March 20, 2023 decision is final and subject to judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.984(d), 416.1484(d).

### II.    THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] While that appeal was pending, Plaintiff filed two more applications for benefits. Tr. 795. Those claims were later consolidated with the claims at issue in the instant appeal. Tr. 796.

*Kurley J. v. Commissioner, Social Security Administration*
Civil No. SAG-23-1753
May 8, 2024
Page 2

The SSA evaluates disability claims using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this process, an ALJ determines, in sequence, whether a claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

Here, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. Tr. 798. At step two, the ALJ found that Plaintiff had "the following severe impairments: schizophrenia; major depressive disorder; adjustment disorder with depressed mood; and obesity." Tr. 799. The ALJ found that Plaintiff's "HIV infection, urinary frequency and incontinence, diabetes, chronic kidney disease, hypertension, heart murmur, acid reflux, vitamin D deficiency, anemia, osteopenia, right rotator cuff syndrome, vertigo, allergies, fatty liver disease, and lower back degeneration and sacroiliac joint degeneration" were non-severe. Tr. 800. The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 801. The ALJ then determined that Plaintiff had the residual functional capacity[2] ("RFC") to:

> perform medium work . . . except: She can frequently climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can occasionally balance. She can frequently stoop, kneel, crouch, and crawl. She can occasionally be exposed to unprotected heights and moving mechanical parts such as open motors where gears are exposed. She can occasionally be exposed to dust, odors, fumes, and pulmonary irritants. She can occasionally be exposed to noise above office level. She is limited to simple, routine, repetitive tasks that are not at a production pace rate, meaning no assembly line work, no hourly quotas, and there would be consistent pace of work throughout the day. She can have occasional interaction with supervisors, coworkers, and the public.

Tr. 804. The ALJ concluded that Plaintiff was not disabled because she could perform jobs that existed in significant numbers in the national economy. Tr. 820.

### III.   LEGAL STANDARDS

The Court's review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The ALJ's factual findings are conclusive if supported by "substantial evidence," 42 U.S.C. § 405(g), which is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla" and "somewhat less than a preponderance." *Id*. In conducting the "substantial evidence" inquiry, the Court considers whether the ALJ "analyzed all

---

[2] A claimant's residual functional capacity ("RFC") is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

evidence" and "sufficiently explained the weight [they have] given to obviously probative exhibits[.]" *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

## IV.   ANALYSIS

Plaintiff argues that the RFC determination is not supported by substantial evidence. ECF No. 13 at 8. Specifically, she avers that the ALJ failed to assess her RFC in accordance with Social Security Ruling ("SSR") 96-8p. *Id*. at 14. With respect to mental functions, Plaintiff avers that the ALJ "materially erred by failing to provide any narrative explanation as to why [they] believed that Plaintiff could [work] at a 'consistent pace . . . throughout the day.'" *Id.* at 17 (quoting Tr. 804). With respect to physical functions, Plaintiff contends that the ALJ did not explain how Plaintiff retained the capacity to perform medium work. *Id.* at 10–14. Defendant counters that substantial evidence supported the ALJ's physical and mental findings. ECF No. 15 at 6–14.

When a claimant has one or more mental impairments, an ALJ must make a specific finding as to the claimant's degree of limitation in four areas of functional limitation. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). One of those areas is concentration, persistence, and pace ("CPP"), which involves "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" CPP limitation indicates that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c). When an ALJ finds that a claimant has a moderate CPP limitation, the ALJ must include a corresponding limitation in their RFC assessment or explain why no such limitation is warranted. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

Here, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 802. The ALJ "account[ed]" for this limitation in the RFC assessment by limiting Plaintiff to performing "simple, routine, repetitive tasks that are not at a production pace rate (no assembly line work, no hourly quotas, consistent pace of work throughout the day)." Tr. 810. The ALJ provided the following explanation for this provision:

> The decrease of the claimant's psychotic symptoms and the reduction of her depression/mood issues with medication, the absence of symptoms such as suicidal ideation, the fact that [her] medication was kept the same for much of the relevant time period, the absence of psychiatric hospitalizations, and the claimant's reports that she could perform simple activities of daily living suggest that the claimant can . . . perform simple, routine, repetitive, nonproduction pace tasks in the workplace despite some baseline disorganization, distrust, and paranoia at times.

Tr. 812.

The Court cannot determine, based on this explanation or by reviewing the remainder of the decision, the ALJ's basis for concluding that Plaintiff's lack of psychiatric symptoms and/or hospitalizations, her simple daily activities, and her stable dosage of medication support the

conclusion that Plaintiff's moderate CPP limitation can be accommodated by a restriction to simple tasks which are not performed at a production-rate pace. Consequently, the ALJ's decision contravenes SSR 96-8p, which sets forth the procedures necessary to determining a claimant's RFC. The ruling directs ALJs to assess claimants' "work-related limitations and restrictions" on a function-by-function basis and provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *6–7 (July 2, 1996).

To be sure, the ALJ appropriately relied upon evidence in crafting the RFC assessment's CPP-related provisions. But the ALJ did not explain *how* those provisions are supported by the evidence. Instead, the ALJ went "straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). This practice deprives the Court of the "logical explanation" necessary to conducting "meaningful appellate review." *Id.* at 312. Because the ALJ did not adhere to SSR 96-8p's narrative-discussion requirement, their decision does not adequately explore the "work-related limitations and restrictions" that stem from Plaintiff's CPP deficit.[3] SSR 96-8p, 1996 WL 374184, at *6.

Although there is no per se rule requiring remand when an ALJ fails to analyze a function, remand is appropriate when an ALJ fails to evaluate a "relevant" function. *Dowling v. Comm'r of Soc. Sec. Admin*, 986 F.3d 377, 388–89 (4th Cir. 2021). Here, the ALJ's finding that Plaintiff has a moderate CPP limitation triggered a duty to either address CPP in the RFC assessment or explain why doing so is unnecessary. *Mascio*, 780 F.3d at 638. Thus, given the relevance of CPP to Plaintiff's case, the ALJ's failure to explain how the evidence supports the RFC assessment's CPP-related provisions is an error that warrants remand. *See Dowling*, 986 F.3d at 389.

As a final matter, the Court notes that the ALJ further contravened SSR 96-8p by failing to properly reconcile the RFC assessment with the evidence. "If the RFC assessment conflicts with an opinion from a medical source," the ALJ must "explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Here, the ALJ restricted Plaintiff to performing at a "consistent pace of work throughout the day." Tr. 804. The ALJ also assigned "partial[]" weight to a mental RFC assessment conducted by Dr. Elliott Rotman. Tr. 816. Dr. Rotman opined that Plaintiff was "[m]oderately limited" in her ability to "perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 921. The ALJ did not explicitly reject this

---

[3] The ALJ did assign persuasive value to an opinion by Dr. Tyler Calabrese, who found that Plaintiff was "limited to simple, routine, repetitive tasks with occasional interaction with others and no fast-pace production or stringent quotas[.]" Tr. 817. But Dr. Calabrese did not connect those limitations to Plaintiff's CPP issues. *See* Tr. 583. Thus, the ALJ's assignment of persuasive weight to the opinion does not permit meaningful review of how Plaintiff's CPP deficit was accommodated. *Cf. Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017) (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight").

finding. *See* Tr. 815–16. It is thus unclear how the ALJ found that Plaintiff could perform work at a consistent pace throughout the workday despite Dr. Rotman's opinion. The ALJ's failure to resolve this conflict, compounded by the lack of explanation discussed above, impedes meaningful review and warrants remand for further analysis. *Mascio*, 780 F.3d at 636–38.

On remand, the ALJ must either: (1) explain how the RFC assessment addresses Plaintiff's moderate CPP limitations or (2) explain why no RFC provision is necessary to address those limitations. *Id.* at 638. Because the case is being remanded on these grounds, the Court need not address Plaintiff's other argument. The Court expresses no opinion on the ultimate merits of Plaintiff's applications for benefits.

## V. CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. An implementing order follows.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States District Judge